# ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP

Attorneys at Law
100 Lafayette Street, Suite 501
New York, NY 10013

FRANKLIN A. ROTHMAN
JEREMY SCHNEIDER
ROBERT A. SOLOWAY
DAVID STERN

Tel: (212) 571-5500
Fax: (212) 571-5507

September 16, 2008

<u>VIA ECF</u>

Hon. David G. Trager
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Sam Credell
            <u>06 Cr. 122 (DGT)</u>

Dear Judge Trager:

    I am the attorney for Sam Credell in the above-referenced matter. I submit this letter to request that your Honor grant Mr. Credell a downward departure pursuant to United States Sentencing Guidelines § 5K2.12 which authorizes a departure when a defendant acts as a result of coercion or duress not amounting to a defense, and to address the question of what constitutes a reasonable sentence for Mr. Credell under Title 18 U.S.C. § 3553(a).

    I.    <u>BECAUSE MR. CREDELL ACTED AS A RESULT OF DURESS AND COERCION, A DOWNWARD DEPARTURE IS WARRANTED</u>

    United States Sentencing Guidelines § 5K2.12 states in pertinent part that:

> If the defendant committed the offense because of serious coercion, blackmail, or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions to the seriousness of coercion, blackmail, or duress

Hon. David G. Trager
September 16, 2008
Page Two

    involved, and on the extent to which the conduct would have been less harmful as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.

To be eligible for this departure Mr. Credell is required to make "an objective showing that a reasonable person would have been coerced" under the particular circumstances of his case. United States v. Cotto, 347 F.3d 441, 446 (2d Cir. 2003) quoting United States v. Smith, 987 F.2d 888,891 (2d Cir. 1993). Here there can be little doubt of Mr. Credell's objective fears.

    For most of his fifty-eight years, indeed until 1997, Mr. Credell was a hard-working and productive member of society. However, in 1997 he was diagnosed with AIDS and began a downward spiral which has resulted in the instant offense. At around the time of his diagnosis, Mr. Credell developed a serious addiction to crack cocaine, ceased work in the United States Attorney's Office for the Eastern District of New York and found himself struggling through life at the Wyckoff Housing Development Projects ("Wyckoff Hosues"). Until the time of his arrest, he lived at 574 Warren Street, Apartment 1S.

    The Wyckoff Houses are, and have historically been, rife with drugs and crime. Beginning in 2004 and ending with their arrest in this case, the drug trade in the Wyckoff Houses was controlled by identical twin brothers, Saquan and Kaywan Wallace. The Wallace brothers engaged in acts of heinous violence, including murder, in order to control their "turf" and their business.. See Pre-Sentence Investigation Report ("PSR") ¶ 7. Capitalizing on the weakness of the drug addicted residents of the Wyckoff Houses, the brothers routinely used the apartments of drug addicted tenants to sell their drugs and paid those tenants with drugs and/or money. PSR ¶ 10. In 2004, when the Wallace brothers first approached Mr. Credell and told him that they intended to use his apartment as a crack spot for their business, Mr. Credell would not allow them to do so. However, after being threatened with violence, Mr. Credell acceded to their demands (PSR ¶ 49) and accepted the drugs they offered in exchange for the use of his apartment. Although he allowed them to use his apartment, Mr. Credell was, according to the case agents, not himself involved in the sale of crack-cocaine. PSR ¶¶ 47, 49.

Hon. David G. Trager
September 16, 2008
Page Three

  Moreover, notwithstanding his coerced agreement to allow the Wallace brothers to use his apartment, Mr. Credell made numerous attempts to distance himself from the apartment and the sales of crack-cocaine. Having been threatened by the Wallace brothers, and being acutely aware of their capacity for violence, Mr. Credell was afraid to try and directly take his apartment back from them or to report them to the police. He did, however, make a number of other efforts to free his apartment from their control.

  On August 14, 2004, Mr. Credell filed a report with the New York City Police Department stating that his apartment had been taken over by people who refused to leave. A copy of that report is attached as Exhibit A. No action was taken by the police. In addition to reporting the forcible seizure of his apartment to the police, Mr. Credell made efforts to transfer to another apartment within Wyckoff Houses. On August 4, 2004 he filed a "Tenant Request for Transfer" which was never acted on. A copy of the request is attached as Exhibit B. For the next two years Mr. Credell made numerous complaints to the Housing Authority about the condition of his apartment in an effort to have someone intervene and with the hope that the attention would cause the drug organization which had commandeered his apartment to leave. Copies of those complaints including an additional request for an apartment transfer made on January 12, 2006, are attached collectively as Exhibit C. None of these efforts succeeded and on March 6, 2006, Mr. Credell was arrested. At the time of his arrest Mr. Credell informed the police that:

> Saquan Wallace and Kaywan Wallace had approached him in 2004 and told him they wanted to use his apartment to sell crack-cocaine. Credell responded in the negative, at which time Kaywan Wallace and Saquan Wallace threatened him with violence and proceeded to use the apartment.

  In addition to informing authorities of his dilemma in ways designed not to betray his true goal, to get the Wallace organization out of his apartment, Mr. Credell avoided being in his apartment whenever possible. While he was present at the apartment at times, he spent most of his time at the home of his girlfriend, Lynette Stewart. Some proof of his infrequent presence at the apartment can be found in the inability of the Housing Authority to serve him with legal papers on several occasions. Attached as Exhibit D are reports indicating the inability of process servers to serve Mr. Credell on November 17, 2005, March 13, 2005, and on

more than one occasion in April 2006.

While Mr. Credell admits his guilt in this case, he should be granted a downward departure. He had a reasonable and objective fear that known violent drug dealers would kill or injure him if he did not allow them to use his apartment to distribute crack-cocaine and made efforts to thwart their use of his apartment.

## II. MR. CREDELL SHOULD RECEIVE A SENTENCE of TIME SERVED PURSUANT TO TITLE 18 U.S.C. § 3553(a).

Title 18 U.S.C. § 3553(a) directs that "[t]he court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the factors set forth in Section 3553(a)(2): retribution, deterrence, incapacitation, and rehabilitation. The language "sufficient, but not greater than necessary" is not just a factor to be considered with the others, but sets an independent limit on the sentence a court may impose. See United States v. Denardi, 892 F.2d 269, 276-277 (3d Cir. 1989). In determining the sentence minimally sufficient to comply with the purposes set forth in Section 3553(a)(2), the court must consider the following factors: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the kinds of sentences available; 3) the guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range; 4) the need to avoid unwarranted sentencing disparity; and 5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1) & (2). Neither the statute nor United States v. Booker and Fanfan, 125 S.Ct. 738 (2005), suggest that any one of these factors is to be given greater weight than any other factor. Therefore, after consideration of all the recited factors, the court has full discretion to sentence anywhere within the statutory range. Id. 791 (Scalia, J., dissenting).

Sam Credell has been convicted following his plea of guilty to a violation of 21 U.S.C. § 856 for allowing his apartment to be used as a site for distributing crack-cocaine. He fully admits to his criminal conduct and recognizes that he must be punished for it. However, because of his fragile medical condition and other mitigating circumstances he seeks a sentence of probation or another non-jail sentence.

## III. Characteristics and History of the Defendant

Sam Credell is a fifty-eight-year-old man who, for the majority of his life, until he became seriously ill, was a productive working

Hon. David G. Trager
September 16, 2008
Page Five

citizen who has no prior criminal record. After leaving high school in 1969, Mr. Credell began to work at various jobs to support himself. However, his primary source of both income and pleasure was as a musician. For nine years, from 1977 until 1986, Mr. Credell was employed as a professional musician with a group called "Carol Townes and Fifth Avenue." A copy of a photograph depicting Mr. Credell with the singing group is attached as Exhibit E. When his career as a musician began to wind down, Mr. Credell attended Drake Business School where he received a two-year degree in business. A photograph of Mr. Credell at his graduation from Drake is attached as Exhibit F. Mr. Credell then was hired as an administrative assistant in the Civil Division of the United States Attorney's Office for the Eastern District of New York. He was employed by the United States Attorney from 1986 until 1997 when he left as a result of the onset of symptoms of AIDS and other illnesses. Since that time he has worked odd jobs and received public assistance.

Mr. Credell is a narcotics addict who has struggled with his addiction for many years. Ultimately, Mr. Credell was vulnerable prey for the Wallace brothers because of his addiction and so in many ways, it is his drug use - not any criminal tendency - that landed him in the predicament he now finds himself. Although he has made repeated efforts to conquer his illness, he has been hindered by depression over his medical condition and his longstanding addiction. Letters from the most recent drug rehabilitation programs he has attended are attached as Exhibit G. It is important to note that although he has been an addict for many years, Mr. Credell has created no problems in his community other than the instant case. A letter from a member of the Tenant Patrol attesting to his behavior in the community is attached as Exhibit H.

Although he has been unsuccessful in overcoming his own addiction, Mr. Credell has been an asset to others with addictions. Despite his own shortcomings, Mr. Credell recognizes the importance of sobriety and commitment to the drug programs and is able to convey those ideas to those in the rehabilitation programs with him. Letters from Scott Weinstein and Frank Adamo attesting to Mr. Credell's positive influence are attached collectively as Exhibit I.

Mr. Credell is, notwithstanding his addiction, a kind and loving person who has positive relationships with his girlfriend Lynette Stewart, and his sister Audrey Credell. Prior to May 7, 2008, when Mr. Credell was remanded for violating his conditions of pre-trial release, he aided his disabled sister by cooking,

Hon. David G. Trager
September 16, 2008
Page Six

shopping, and giving her whatever help she required. A letter from Ms. Credell is attached as Exhibit J. He also maintained a long term relationship with Ms. Stewart and, despite the problems they both faced, was a loving and attentive partner. A letter from Ms. Stewart is attached as Exhibit K.

IV. Nature and Circumstances of the Offense

We do not dispute the seriousness of the crimes with which Mr. Credell stands convicted.

V. The Guidelines and Policy Statements Issued by the Sentencing Commission, including the advisory Guideline Range

For the reasons discussed in section I. *supra* we do not believe that Mr. Credell's guideline range is correctly calculated and urge the Court to downwardly depart.

VI. Conclusion

In light of Mr. Credell's personal history, his recognition of the wrongfulness of his conduct, and the circumstances which led to his commission of this offense, it is respectfully requested that your Honor sentence Mr. Credell to a sentence of time served and whatever other conditions Your Honor deems appropriate.

Respectfully submitted,

David Stern

cc: AUSA Moe Foderman
    Steven S. Guttman

Encl.